CANADA PACKERS LTD. v. UNITED STATES

No. 4993.—Entered at Niagara Falls, N. Y., November 29, December 5, 9, 1938. Entry Nos. NF 2295, NF 2416, NF 2486.

(Decided August 30, 1940)

Barnes, Richardson & Colburn (Joseph Schwartz of counsel) for the plaintiff.

Charles D. Lawrence, Acting Assistant Attorney General (William J. Vitale, special attorney), for the defendant.

EVANS, Judge: This case comes before the court on an appeal to a single judge from the action of the appraiser in advancing the value of three importations of hides which entered the United States from the Dominion of Canada at the subport of Niagara Falls. By consent of the parties the three reappraisements were consolidated for trial.

The merchandise covered by reappraisement 131586–A was entered on the 29th of November, 1938, and consisted of branded cowhides of grades Nos. 1 and 2, and of branded cowhides, Kosher, Nos. 1 and 2. They were entered in accordance with a notation on the invoice at 1 cent per pound less than the invoice price, and on appraisement each grade was respectively advanced to the invoice price. The commercial invoices for the foregoing hides were dated at St. Boniface, Manitoba.

The merchandise covered by reappraisement 131587–A was entered on the 5th of December, 1938, and consisted of native cowhides, grades Nos. 1 and 2, and of native cowhides, Kosher, grades Nos. 1 and 2. They were likewise entered in accordance with a notation on the invoice, and on appraisement each grade was respectively advanced 1 cent per pound. The commercial invoices indicate that these hides originated at St. Boniface also.

In the case of reappraisement 133317–A the merchandise entered the United States on the 8th of December, 1938, and consisted of Nos. 1 and 2 native cowhides and Nos. 1 and 2 branded cowhides, all entered according to notations on the invoices and all advanced 2 cents per pound by the appraiser. The last-mentioned hides originated at Edmonton, Alberta, according to the commercial invoice.

The plaintiff called as its witnesses the broker who acted for the American purchaser and the representative of Canada Packers, Ltd.,

from whom the hides in question were purchased in Canada. From this testimony it appears that all the merchandise involved in the various entries was purchased under an agreement dated November 16, 1938, between the importer and Canada Packers, Ltd., at a price of $11.57 per hundred pounds, duty paid, f. o. b. St. Boniface, for No. 1 hides. The evidence establishes that it is customary to make quotations of No. 1 hides and that there is a constant difference of 1 cent a pound between No. 1 hides and No. 2 hides, the latter being hides that have been damaged and are sold therefore at the lower price, so that when a quotation is made for No. 1 hides both the seller and the buyer understand that No. 2 hides will cost 1 cent less, whether it is stipulated or not.

It is also shown that a Kosher hide is a hide from a cow that has been slaughtered by having its throat cut by a rabbi, and that the differential between No. 1 Kosher and No. 1 hides is ½ cent a pound, and between No. 2 Kosher hides and No. 1 hides is 1½ cents a pound, that is, the Kosher hides are sold at these reductions from the price of No. 1 hides.

It is agreed that the allowances made on the invoices were the correct allowances for damages by grubs. One witness testified that a hide is called a grubby hide when there are five or more holes in the hide which are caused by the warble, and that they are sold at 1 cent per pound less than the No. 1 hides.

The testimony establishes that between the date of the contract, to wit, November 16, 1938, and November 29 of the same year, the date of the first importation involved, the foreign-market value of hides declined 1 cent, and that the value remained constant from that date until December 5, the date of the second importation. On the latter date Canada Packers, Ltd., were still offering comparable hides at 11½ cents per pound, duty paid, f. o. b. Toronto, but were finding no buyers. A differential of 93 cents per 100 pounds is shown to have constantly existed between f. o. b. Toronto prices of such hides and f. o. b. Winnipeg or St. Boniface prices, and $1.50 per 100 pounds between f. o. b. Toronto prices and f. o. b. Edmonton prices.

From the testimony it appears that pursuant to instructions from his principal in the United States the broker in question on December 8 made an offer to Canada Packers, Ltd., and a similar offer to Swift Canadian Co., Ltd., to purchase quantities of hides at 10½ cents per pound, duty paid, f. o. b. Toronto, No. 1 grade; that both of these companies accepted the offer, and that the hides shipped on such sales were in all respects, grade for grade, similar to the hides involved. Based upon these sales the importer contends that on December 8, the date of the last importation involved, the duti-

able value of the hides in question was 2 cents less than the appraised value, grade for grade.

The Treasury representative's report introduced in evidence as Exhibit 1 undoubtedly furnished the basis upon which the appraiser made his advances. It is contended by the importer that the report is in error in reference to the statement made therein that—

The Toronto output of October heavy native cowhides was sold on December 8, 1938 to Endicott Johnson Corp. at 12½ cents per pound duty paid and shipped January 25, 1939.

The witnesses produced by the importer were the ones who negotiated the sale referred to, and each testified that statement was an error; that the October output was sold at 10½ cents per pound, and plaintiff produced an affidavit of a director of the importing corporation who made the purchase substantiating that fact. Attached to the affidavit are duplicate originals of the confirmations of the orders given to Canada Packers, Ltd., and Swift Canadian Co., Ltd., for the hides sold on December 8.

The Treasury representative who made the report, Exhibit 1, appeared at his own expense to testify that in his best judgment he had copied the records furnished him by the sellers, who put at his disposal all the records they possessed, and that he was at a loss to understand, assuming that the confirmations of the orders, which are marked Collective Exhibit 4, were true duplicate originals, how such an error could have been made, if one was made.

The court cannot reconcile these discrepancies, but in view of the sworn testimony of the reputable witnesses called it is persuaded that an error was made in transcribing the price involved. No one is infallible and no reflection should be made because of the discrepancy. The court holds, however, that the importer has made its case; that the proper basis of value of the hides in issue is export value and that such export values were the entered values, there being no controversy as to the usual wholesale quantities and it being a fact not seriously controverted that Toronto is the principal market in Ontario, Winnipeg, or its suburb St. Boniface, the principal market in Manitoba, and Edmonton the principal market in Alberta.

Judgment will issue accordingly.